UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN SANDERS, JR., individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.:  4:21-CV-152 |
| GRIFFIN PERSONNEL GROUP, INC., | ) ) ) | CLASS ACTION |
| Registered Agent: John M. Hessel 2299 Technology Dr., Suite 200 O'Fallon, MO  63368 | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

### I.   PRELIMINARY STATEMENT

1. Plaintiff John Sanders, Jr., individually and on behalf of all others similarly situated, files this Class Action Complaint against Griffin Personnel Group, Inc. ("Griffin'). Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

### II.   NATURE OF THE CASE

2. This is a consumer class action based upon Defendant's willful violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA").  Plaintiff brings this action on behalf of hundreds, if not thousands, of employment applicants who have been the subject of Defendant's illegal practices under the Fair Credit Reporting Act.

1

3. Congress created heightened standards regulating the use of consumer reports for employment purposes. 15 U.S.C. § 1681b(b)(3). Under the FCRA, a person using a consumer report for employment purposes who intends to take any adverse employment action based in whole or in part on the report must provide the consumer with a copy of the report and a written description of the consumer's rights under the FCRA, *before taking such adverse action. Id*. After an adverse action occurs, the applicant must receive a second notice mandated by 15 U.S.C. § 1681m. (Hereafter, Plaintiff will refer to the first of these notices as the "Pre-Adverse Action Notice" and the second as the "Adverse Action Notice.").

4. This is one of the most fundamental protections afforded to employees under the FCRA. The purpose of this Pre-Adverse Action Notice is to allow prospective and current employees an opportunity to clear up any inaccuracies or misstatements in the report and to address any misunderstandings the report may have created for the employer before the employer receives a supposedly "verified" report from a third-party agency. For this reason, the FCRA is designed to provide employees/applicants with ample time to review, dispute, and/or address the information contained in their consumer report including the right to identify inaccuracies or misunderstandings and correct or explain them before the employer has made an employment decision.

5. Griffin systematically violates section 1681b(b)(3) of the FCRA by using consumer reports to take adverse employment action without, beforehand, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and summary of rights under the FCRA, leaving the person who is the subject of the report without any meaningful opportunity to correct any errors on the report.

6. In addition, section 1681g of the FCRA requires that every consumer reporting agency "shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request."

7. Section 1681g "'is the pivotal section regarding the disclosure of the consumer's file.'" *Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680 (N.D. Ga. 2013) (*quoting Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768 (11th Cir. 2006)). By giving consumers the right to access the information in their files, section 1681g serves two important purposes: it allows consumers to confirm that the information in their consumer file is accurate, and it provides them with the information necessary to know who to contact if it is not. Indeed, Congress "felt that it was necessary to give consumers a specific statutory right to acquire such information on sources" because in some cases it "may be the only way in which the consumer can effectively" correct mistakes. 116 Cong. Rec. 35,940 (1970); *see also Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007) ("A primary purpose of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information *via* the grievance procedure established under § 1681i.").

8. Griffin violates Section 1681g of the FCRA by failing to provide consumers, including Plaintiff, with a copy of their consumer file following their requests.

9. Consumers, including Plaintiff, suffer concrete harm as a result of Griffin's failure to provide them with their consumer files. Griffin deprives consumers, including Plaintiff, of information to which they are entitled to receive under the FCRA. As a result, consumers are unable to verify and/or dispute the information that Griffin maintains in its files about them and sells to users of its reports.

### III. JURISDICTION & VENUE

10. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### IV. PARTIES

12. Plaintiff is an adult individual who resides in Highland, Illinois.

13. Griffin is a consumer reporting agency that regularly conducts business in the state of Missouri and has a principal place of business located in O'Fallon, Missouri.

14. According to Griffin:

> Our approach is to dedicate a GPG human resources specialist to your team and design a process that meets your exact needs. Once that is done, you will be armed with a background check template to ensure consistency in every screening we perform for you.
>
> All GPG templates include a 'Reference Check Summary Sheet' that immediately relays 'at a glance' whether or not the candidate has successfully completed the verification process. GPG has three designations for all background checks: 'PASS', 'HOLD', and 'FAIL'.

https://www.gpg-inc.net/pre_employment/process.cfm (last visited January 18, 2021).

15. In addition, Griffin advertises:

> The majority of our national clients enjoy a turnaround time of three business days for most background checks. Naturally, more complex screening can delay the process, but all our checks can be completed in a maximum of five business days.
>
> GPG background check reports can be accessed and downloaded by our corporate clients from any global location that receives access to the World Wide Web. GPG has a centralized, secure website equipped with all of the latest technologies to counteract Internet infiltration tactics. From this location, clients can view, print, and/or save reports to a computer hard drive.

https://www.gpg-inc.net/pre_employment/process.cfm (last visited January 18, 2021).

## V.     FACTUAL ALLEGATIONS

**A.     Griffin's Practices As A Consumer Reporting Agency And Furnisher Of Consumer Information For Employment Purposes**

16.     At all times pertinent hereto, Griffin has been a consumer reporting agency ("CRA") as defined by section 1681a(f) of the FCRA.

17.     At all times relevant hereto, Plaintiff was a "consumer" as that term is defined by section 1681a(c) of the FCRA.

18.     The FCRA regulates, among other things, the collection, maintenance, and disclosure of consumer reports by CRAs, including public record information.

19.     Griffin investigates and reviews public record databases and maintains consumer files which contain public record information concerning, among other things, the alleged criminal record history of individuals.

20.     From its files, Griffin sells consumer reports to potential employers wishing to investigate the employment, criminal, and other history, or lack thereof, with regard to various job applicants.

21.     Griffin provides service for its clients called "scoring," by which Griffin reviews consumers' background reports and then decides – on behalf of its clients - whether an applicant is employable or not.

22.     As part of this scoring service, Griffin receives a decision matrix from its clients, which includes certain information that is preclusive of employment with those clients.

23.     As part of its scoring service, Griffin assembles a consumer report about a consumer and then reviews the consumer report using the decision matrix to determine whether the consumer is eligible for employment.

5

24. If a consumer is determined to be not eligible for employment Griffin scores that consumer as "FAIL."

25. When Griffin "scores" a consumer as "FAIL" for a job, it is taking an adverse employment action against the consumer. *See Goode v. LexisNexis Risk & Information Analytics Group, Inc.*, 848 F. Supp. 2d 532, 538-542 (E.D. Pa. 2012) (finding that CRA adjudicating plaintiffs as "noncompetitive" constitutes adverse action under the FCRA).

26. Griffin does not send consumers a pre-adverse action letter *before* scoring them as declined or not hirable for a job.

27. After scoring the client as "FAIL," Griffin sends a letter or an email to the consumer.

28. When Griffin sends the letter, Griffin has already determined the consumer is ineligible for employment.

29. Thus, by the time Griffin sends out the letter or email for the employer, some adverse action on the consumer's employment application has already occurred.  The consumer is not notified in advance that he has already been rejected, nor does he have a chance to dispute the report with Griffin or to inform the prospective employer of the circumstances around the information in the consumer report.

30. Additionally, section 1681g of the FCRA requires that every CRA "shall, upon request, and subjection to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request."

31. Griffin routinely fails to clearly and accurately disclose to consumers (1) all information in their files, (2) the sources of the information, and (3) identification of each person that procured a consumer report.

6

32. Griffin's failure to do so injures the consumers and interstate commerce as a whole, as it deprives consumers of valuable information and prevents them from disputing and correcting potentially inaccurate, incomplete, and/or outdated adverse information.

33. Griffin's failure to comply with Section 1681g further injures consumers by preventing them from knowing the information that Griffin is reporting to prospective employers prior to the time it is reported, thus potentially injuring their job prospects

**B.     The Experience of Plaintiff**

34. On or about April 20, 2020, RGA offered Plaintiff a full-time job as a Senior Security Risk Analyst with an anticipated start date of May 18, 2020. The position was to pay Plaintiff $104,000 per year, plus a bonus and other benefits.

35. RGA's employment offer was contingent on Plaintiff satisfactorily completing a background investigation.

36. Plaintiff accepted RGA's offer.

37. That same day, Plaintiff signed a background check authorization from Griffin Personnel Group ("Griffin"). The form stated:

> In connection with my application for employment, I understand that a thorough background check may be requested, involving information as to my character, work habits, performance, and experience, along with reasons for termination of past employment. I further understand information may be requested from public and private sources about my: worker's compensation injuries, driving record, criminal record, education, previous employment, salary history, credit history and any civil filings and/or bankruptcies.

38. Griffin Personnel Group is a consumer reporting agency.

39. Upon information and belief, RGA then purchased a consumer report about Plaintiff from Griffin.

7

40. On May 15, 2020, RGA called Plaintiff to a meeting and told him that he had not passed the background check.

41. A few days later, Plaintiff received a letter in the mail from Griffin dated May 14, 2020:

> Griffin Personnel Group regrets to inform you that based on the results of your background check; you are not eligible for employment with RGA. RGA is therefore rejecting your application for employment effective immediately.
>
> Please be advised that the decision of RGA to reject your application was based, at least in part, on the information obtained from a consumer report.

42. When Plaintiff was informed that he would be denied employment because of information in his background check, neither RGA nor Griffin had provided him with a copy of the consumer report.

43. Since Plaintiff had not received a copy of the consumer report on which RGA was declining his employment, he did not know why he was being denied employment or the information Griffin had reported about him to RGA.

44. On June 9, 2020, Plaintiff sent to Griffin via certified mail a request for his file. Plaintiff wrote: "I recently learned that you issued a background report about me. Accordingly, I am writing to request a copy of my complete file, including (1) the sources of any information, (2) a list of all employers or other entities to which you sent reports about me, and (3) copies of all such reports. This request covers all information over the previous three years."

45. To date, Griffin has not responded to Plaintiff's request or provided him with any of the information that it reported to RGA. It has failed to do so, despite its confirmation in Plaintiff's background check document that he could obtain a copy of his report by sending Griffin a request.

8

## VI.     CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

**The Griffin Pre-Adverse Action Class:**

All persons residing in the United States (including all Territories and other political subdivisions of the United States) who were the subject of a consumer report by Griffin Personnel Group, Inc. within the five-year period preceding the filing of this Complaint and continuing through the resolution of this action, whom Griffin Personnel Group, Inc. scored as not eligible for employment (e.g., "FAIL").

**The Griffin File Disclosure Class:**

All persons residing in the United States (including all Territories and other political subdivisions of the United States) who, beginning two years prior to the filing of the Complaint and continuing through the resolution of this action, requested that Griffin Personnel Group provide a consumer file disclosure.

47.     Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

48.     **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical.  Upon information and belief, Griffin scores hundreds, if not thousands, of consumers each year based on their consumer reports, and those persons' names and addresses are identifiable through documents maintained by Griffin. Additionally, upon information and belief, Griffin receives tens if not hundreds of requests for file disclosures each year, and those persons' names and addresses are identifiable through documents maintained by Griffin

49.     **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes and predominate over the questions affecting only individual members.  The common legal and factual

9

questions include, among others: (a) whether Griffin willfully violated section 1681b(b)(3) of the FCRA and (b) whether Griffin willfully violated section 1681g of the FCRA.

50. **Typicality.  FED. R. CIV. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for statutory and punitive damages as Class members arising out of Griffin's common course of conduct.

51. **Adequacy.  FED. R. CIV. P. 23(a)(4).**  Plaintiff is an adequate representative of the Classes.  His interests are aligned with and not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Classes.

52. **Predominance and Superiority.  FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Griffin's conduct.  It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Griffin's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VII. CAUSES OF ACTION

### COUNT I

### 15 U.S.C. § 1681b(b)(3) (Class Claims against Griffin)

56. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

57. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

58. Griffin is a "person" and regularly use background reports for employment purposes. 15 U.S.C. § 1681a(b).

59. The reports used by RGA and Griffin are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

60. The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report and a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking any such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

61. For purposes of this requirement, an "adverse action" includes "any … decision … that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

62. The FCRA requires Griffin, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. §§ 1681b(b)(3)(A)(i) and (ii).

63. Griffin is aware of the FCRA, but failed to comply with its requirements.

64. Griffin willfully and/or recklessly violated section 1681b(b)(3) of the FCRA by failing to provide consumers, including Plaintiff, the following *before* using such reports: (a) the

required Pre-Adverse Action Notice; (b) a copy of the consumer report; and (c) a written description of the consumer's rights under the FCRA.

## COUNT II

### 15 U.SC. § 1681g (Class Claim against Griffin)

99. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

100. Pursuant to 15 U.S.C. § 1681g(a), a consumer reporting agency "shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request . . . (2) The sources of the information . . . (3)(a) Identification of each person (including each end-user identified under section 1681e(e)(1) of this title) that procured a consumer report."

101. The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

102. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Griffin is liable for failing to provide consumers with file disclosures, as required by 15 U.S.C. § 1681g(a).

103. Griffin is aware of the FCRA, but failed to comply with its requirements.

104. Griffin willfully and/or recklessly violated section 15 U.S.C. § 1681g(a), and further assumed an unjustifiably high risk of harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of actual, statutory and punitive damages for Plaintiff and the Classes;

C. An award of pre-judgment and post-judgment interest as provided by law;

D. An award of attorney's fees and costs; and

E. Such other relief as the Court deems just and proper.

## TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

Dated: February 5, 2021

By: /s/ C. Jason Brown
Charles Jason Brown MO 49952
Jayson A. Watkins MO 61434
Brown & Watkins LLC
301 S. US 169 Hwy
Gower Missouri 64454
Tel: 816-424-1390
Fax: 816-424-1337
brown@brownandwatkins.com
watkins@brownandwatkins.com

ATTORNEYS FOR PLAINTIFF

**WEINER & SAND LLC**

Jeffrey B. Sand (*pro hac vice to be filed*)
181568(GA)
Andrew L. Weiner (pro hac vice to be filed)
808278(GA)
800 Battery Avenue SE
Suite 100
Atlanta, GA 30339
T: 404.205.5029
T: 404.254.0842
F: 866.800.1482
E: aw@wsjustice.com
E: js@wsjustice.com

ATTORNEYS FOR PLAINTIFF